**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION SCHOLARSHIP FUND BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, and the BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE | CIVIL ACTION NO. 1:19-cv-171 |
| 8403 Arlington Boulevard Fairfax, Virginia 22031 | **Additional Required Service under 29 U.S.C. § 1132(h) to:** |
| Plaintiffs, | **U.S. Department of Labor** **Attn: Assistant Solicitor** **for Plan Benefits Security** **200 Constitution Ave., N.W.** **Washington, DC 20002** |
| v. | **U.S. Department of Treasury** **Attn: Secretary of the Treasury** **1500 Pennsylvania Avenue, NW** **Washington, D.C. 20220** |
| J & B MECHANICAL, INC. 128 W Pratt Blvd. Roselle, IL 60172 | |
| and | |
| J&B MECHANICAL SYSTEMS, INC. 1475 N Lincoln St. Schaumburg, IL 60193 | |
| Defendants. | |

## COMPLAINT

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Sheet Metal Workers' International Association Scholarship Fund ("Scholarship Fund"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC" and together with NPF, ITI, Scholarship Fund, SASMI, and SMOHIT, referred to as "the Funds"), hereby complain as follows:

### Introduction

1.      This is a civil action brought by employee benefit plans/trust funds or joint labor management organizations, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendants awarding delinquent contributions, accrued interest, liquidated damages, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Funds.

### Jurisdiction and Venue

2.      Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e), (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(c), as the Plaintiff Funds are administered in this district with their principal place of business in Fairfax, Virginia.

4.      Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5.      Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

6. Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

7. Plaintiff Board of Trustees, Sheet Metal Workers' International Association Scholarship Fund ("Scholarship Fund") is the collective name of the Sheet Metal Workers' International Association Scholarship Fund. The Scholarship Fund is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing funded scholarship benefits. The Scholarship Fund is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of

the Scholarship Fund are duly authorized Trustees whose duty it is to administer the Scholarship Fund for the benefit of the participants and beneficiaries of the Scholarship Fund. The Trustees of the Scholarship Fund are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as the "Scholarship Fund" in this Complaint. The Scholarship Fund is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

8.      Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Sections 3(1), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material herein, has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9.      Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health

Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

10.     Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

11.     The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

12.     At all times relevant to this action, Defendants J & B Mechanical, Inc. ("J&B I") and J&B Mechanical Systems, Inc. ("J&B II", and together with J&B I, "Employer", "Defendant", or "J&B"), have been employers within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and have been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, J&B I has been incorporated in the state of Illinois with a principal place of business at 128 W Pratt Blvd., Roselle, IL 60172.  Upon information and belief, at all times relevant to this action, J&B II has been incorporated in the state of Illinois with a principal place of business at 1475 N Lincoln St., Schaumburg, IL 60193.

**Factual Background**

13.     At all times relevant to this action, Defendants employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 265 ("Local 265") and SMART Sheet Metal Workers' Local Union 73 ("Local 73"), (collectively, the "Unions"), labor organizations representing employees in an industry affecting interstate commerce.

14.     At all times relevant to this action, J&B I was signatory to, and bound by, collective bargaining agreements ("Agreements" or "CBAs") with the Unions. Pursuant to the Agreements, J&B I was obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, the Scholarship Fund, SASMI, SMOHIT, and NEMIC for all hours worked or paid on behalf of its covered employees within the jurisdiction of Local 265 and Local 73.

15.     Although J&B II is not signatory to the CBAs with the Unions, J&B II is an alter ego of J&B I and/or constitutes a single employer with J&B I, and thus is obligated to contribute to the Funds for covered employees.

16.     J&B I was incorporated in the state of Illinois on April 30, 1997 by Jo Slavich. The company was managed by husband and wife, Jo and John Slavich.

17.     J&B II was incorporated in the state of Illinois by John Slavich on October 2, 2018.

18.     At all relevant times, Defendants J&B I and J&B II shared an interrelation of operations, common management, centralized control of labor relations, business purpose, equipment, customers, and common ownership. Specifically:

      a.     John Slavich is the President of both Defendant corporations;

b.     Defendants employ the same classification or similar classification of employees, those employees have the same or similar training, and Defendants perform the same type of work in the same industry in the same geographic market;

c.     Defendants have an overlapping workforce, where certain employees work interchangeably between the two companies, and J&B I has continued to fund the payroll of employees working for J&B II.

d.     J&B II is using or has used J&B I's contractor's license.

19.     To date, despite performing the same work in the same geographical area with the same employees as J&B I, J&B II has not signed a collective bargaining agreement and operates as a non-union employer. Thus, J&B II was established by John Slavich to evade J&B I's obligations under its collective bargaining agreements, including its obligation to remit pension contributions.

20.     As an alter ego of J&B I, J&B II is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), bound to the CBAs with Local 265 and Local 73, and jointly and severally liable for any obligations of J&B I arising from the CBAs.

21.     Pursuant to the CBAs, Defendants are obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents").

22.     Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

23.     Without the information contained in the remittance reports, the Funds cannot determine the entire amount of the monthly contributions due to the Funds or the employees' eligibility for benefits.

24.     The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed and are delinquent if received thereafter.

25.     Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if Defendants fail to timely submit the contractually required remittance reports and contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, Defendants are required to pay the following amounts to the Funds:

    a.     Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily;

    b.     Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed;

    c.     Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

    d.     The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

26.     For the months of September 2013 through December 2018, Defendants employed employees within the jurisdiction of Local 265 and Local 73 for whom contributions were owed

to the Funds and failed to timely make all the required contributions, despite its obligation to do so under the Agreement, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

### Count I
*Delinquent Contributions, Liquidated Damages, Interest and Attorneys' Fees and Costs*

27.    Plaintiffs reallege and incorporate Paragraphs 1 through 27.

28.    This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

29.    Defendants are obligated, under the terms of the Agreement, to provide contributions to the Funds on behalf of its covered employees. Defendants have failed and refused to fulfill its contractual obligations for the months September 2013 through December 2018 for owed contributions, resulting in interest, liquidated damages, and late fees.

30.    For the period of September 2013 through July 2015, Defendants late paid their contributions and owe $595.42 in liquidated damages for this period.

31.    For the period of June 2018 through October 2018, Defendants underpaid or failed to pay their required contributions. For the months of November and December 2018, Defendants failed to provide remittance reports, and accordingly, the Funds have estimated the amounts due for these months.

32.    Based on remittance reports prepared and submitted to the Funds by Defendants for the months of June 2018 through October 2018 and the estimated amounts due for the months of November and December 2018, Defendants owe contributions for the months of June 2018 through December 2018 in the amount of $10,866.76 in contributions. As a result of these delinquent contributions, Defendants also owe $275.95 in interest (calculated through February 15, 2019), and $2,173.26 in liquidated damages.

33.     The total amount owed by Defendants for the period of September 2013 through December 2018 is $13,911.39, plus additional daily interest accruing through the date of payment.

34.     Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Defendants to obtain the outstanding contributions from Defendants. To date, Defendants have neither meaningfully responded to the Fund's demands nor satisfied their obligations to the Funds. There is little prospect that, lacking judicial compulsion, Defendants will satisfy their obligations to the Funds, and pay the delinquent and unpaid contributions, liquidated damages, interest, and late fees due on the delinquent and unpaid contributions.

35.     Defendants' continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' benefits, and other harm. Defendants' failure and refusal to comply with their obligations creates an atmosphere in the industry that encourages other employers to do the same.

**WHEREFORE**, Plaintiffs request a judgment against Defendants for all amounts due to the Funds as follows:

1.     Declare that J&B I and J&B II are alter-egos and/or constitute a single employer and are joint and severally liable for each other's debts;

2.     Declare that Defendants are delinquent in remitting owed contributions to the Funds pursuant to the Agreement;

3.     Award Plaintiffs on behalf of the Funds a judgment for Defendants' delinquent contributions for the period of June 2018 through December 2018 in the total amount of $10,866.76;

4.      Enter judgment against Defendants for interest on all delinquent contributions at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $275.95;

5.      Enter judgment against Defendants for liquidated damages in an amount equal to the greater of interest on the delinquent contributions calculated at the above rate, or 20% of the delinquent contributions, in the amount of at least $2,173.36;

6.      Enter judgment against Defendants for liquidated damages at the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed, in the amount of $595.42;

7.      Order Defendants to provide all outstanding reports for the period of November and December 2018 and remit any contributions due in excess of the estimated amounts awarded, including any resulting interest and liquidated damages due;

8.      Enter judgment for all attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

9.      Award such other relief as the Court deems just and proper.

Respectfully Submitted,

_____/s/ Diana M. Bardes_____
Diana M. Bardes (Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
dbardes@mooneygreen.com
Counsel for Plaintiff Funds

Dated: February 13, 2019

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 13th day of February, 2019, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

_____/s/ Diana M. Bardes_____
Diana M. Bardes